UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK –
POUGHKEEPSIE DIVISION

---------------------------------------------------------------X

In Re:

7 MERRIEWOLD LLC,

                    Debtors.

---------------------------------------------------------------X

Case No. 26-35163-kyp

Chapter 11

<u>NOTICE OF MOTION</u>

Upon the annexed *MOTION FOR ANNULLMENT OF AUTOMATIC STAY NUNC PRO TUNC* ("<u>Motion to Annul</u>") filed by  of Jenelle Arnold, Esq., dated April 7, 2026 and the exhibits annexed thereto, U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST ("<u>Creditor</u>"), by and through its authorized loan servicer, Selene Finance LP ("<u>Selene</u>"), a secured creditor, will move this court before the Hon. Judge Kyu Young Paek, United States Bankruptcy Judge, on the 19th of May , 2026 at 10:00 AM   at 10:00 AM  in the forenoon of that day, or as soon thereafter as counsel may be heard, at the courthouse located at United States Bankruptcy Court, 355 Main Street, Poughkeepsie, NY 12601-3315 for an Order Annulling the Automatic Stay of 11 U.S.C.§362(a) for purposes of validating the foreclosure sale of the premises known as 7 Merriewold Lane S, Monroe, NY 10905 ("<u>Property</u>").

Please register with eCourt Appearances at

https://ecf.nyeb.uscourts.gov/cgibin/nyebAppearances.pl. at least two business days before the scheduled hearing. To register, please provide your name, address, e-mail address, telephone number to be used on the hearing date, and if appropriate, the party that you represent. You will receive instructions how to access the hearing via email two business days before the hearing. On your hearing date, please connect at least ten minutes before your scheduled hearing time, and

keep your audio and video on mute until your case is called.

Dated: April 7, 2026

                                        Respectfully submitted,

                                        */s/ Jenelle Arnold*
                                        Jenelle Arnold
                                        Attorney for Creditor
                                        Aldridge Pite, LLP
                                        8880 Rio San Diego Drive
                                        Suite 725
                                        San Diego, CA 92108
                                        Telephone: (858) 750-7600
                                        Facsimile: (619) 590-1385
                                        Email: JArnold@aldridgepite.com

TO:


**7 Merriewold LLC**
7 Merriewold Lane S
Monroe, NY 10905

**Bentzion Jacobovitch**
7 Merriewold Lane S,
Monroe, NY 10905

**United States Trustee**
Office of the United States Trustee
11A Clinton Ave.
Room 620
Albany, NY 12207

CREDITOR LIST

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK –
POUGHKEEPSIE DIVISION

---------------------------------------------------------------X

In Re:

7 MERRIEWOLD LLC,

              Debtors.

---------------------------------------------------------------X

Case No. 26-35163-kyp

Chapter 11

## MOTION FOR ANNULLMENT OF THE AUTOMATIC STAY NUNC PRO TUNC

U.S. BANK TRUST NATIONAL ASSOCIATION, NOT IN ITS INDIVIDUAL CAPACITY BUT SOLELY AS OWNER TRUSTEE FOR RCF 2 ACQUISITION TRUST ("Creditor"), by and through its authorized loan servicer, Selene Finance LP ("Selene"), hereby moves this Court, pursuant to 11 U.S.C. §362 for an Order Annulling the Automatic Stay for purposes of validating the foreclosure sale of 7 Merriewold Lane S, Monroe, NY 10905 (the "Property"), for all purposes allowed by law, the Note (defined below), the Mortgage (defined below), and applicable law, including but not limited to the right to foreclose. In further support of this Motion, the undersigned respectfully states the following under penalty of perjury:

## I.    STATEMENT OF FACTS

### A.  LOAN HISTORY

1.      On or about January 25, 2019, Bentzion Jacobovitch ("Borrower"), executed and delivered a promissory note in the principal sum of $330,600.00 ("Note"). (Exhibit 1).

2.      The Note is secured by a recorded mortgage ("Mortgage") granting a security interest in the Property. (Exhibit 2).

### B.    THE FORECLOSURE CASE

3.      Creditor commenced a foreclosure proceeding by filing a Complaint in Orange County, New York (the "Foreclosure Case").

4.      On October 3, 2024, Creditor obtained a Final Foreclosure Judgment for

$425,949.64 ("Judgment"). (*See* Exhibit 3).

5.      On April 4, 2025, Creditor recorded a Notice of Sale setting a sale date for May 7, 2025. (*See* Exhibit 4).

6.      Creditor was forced to cancel the scheduled foreclosure sale due to the filing of the First Bankruptcy Case by the Borrower (discussed below).

7.      On January 16, 2026, Creditor recorded the most recent Notice of Sale setting a sale date for February 17, 2026 at 10:00 a.m. (*See* Exhibit 5).

8.      On February 17, 2026 at 10:00 a.m., *the same day as the petition*, Creditor commenced, and then completed a foreclosure sale of the Property. Creditor had no knowledge of the instant Bankruptcy Case at the time it commenced the sale.

9.      On February 17, 2026, after the commencement of the foreclosure sale, a third party allegedly sent an email to Creditor's counsel, Aldridge Pite, LLP, directed to a general customer service inbox, enclosing a copy of the instant Bankruptcy petition, which listed a Bankruptcy filing date of February 17, 2026 at 8:54 a.m. (*See* Exhibit 6).

10.     On February 17, 2026, at 10:15 a.m. a Notice of Bankruptcy Case Fling was filed in the Foreclosure Case. (*See* Exhibit 7).

**C.  THE PRIOR BANKRUPTCY CASE**

11.     On May 5, 2026, *two days before the original sale date*, the Borrower, Bentzion Jacobovitch, filed a prior Chapter 7 Bankruptcy Case in the Southern District of New York and was assigned Case Number 25-35481-kyp (the "First Case"). (*See* Exhibit 8).

12.     On July 25, 2025, the Court entered an Order Dismissing the First. Case.

**C.      THE INSTANT BANKRUPTCY CASE**

13.     On February 17, 2026, *the day of the scheduled foreclosure sale*, an unrelated third party, 7 Merriewold LLC ("Debtor"), filed a Chapter 11 Case in the Southern District of New York and was assigned case number 26-35163-kyp (the "Bankruptcy Case"). The Debtor filed a skeletal petition with blank or missing information. Debtor listed the Property as its principal place of

business on the petition. **The petition was signed by the Borrower, Bentzion Jacobovitch**, as Member of the Debtor. (*See* Dkt No. 1).

14.    Nothing in the Petition or documents confirm or suggest the Debtor was the record owner of the Property as of the Bankruptcy petition date. However, following completion of the foreclosure sale, Creditor discovered the attached unauthorized Bargain and Sale Deed purporting to transfer interest in the Property from the Borrower, Bentzion Jacobovitch to the Debtor, 7 Merriewold LLC. **The Deed reflects that it was recorded on February 17, 2026 at 9:48 a.m. (minutes before the scheduled foreclosure sale).** (*See* Exhibit 9).

15.    Debtor, an entity, filed the Bankruptcy Case without counsel.

16.    On February 17, 2026, the Court entered a Deficiency Notice. (Dkt No. 1). Pursuant to the Deficiency Notice, the Court noted the following defects:

- Schedule A/B due **3/3/2026**
- Schedule D due **3/3/2026**
- Schedule E/F due **3/3/2026**
- Schedule G due **3/3/2026**
- Schedule H due **3/3/2026**
- Summary of Assets and Liabilities due **3/3/2026**
- Statement of Financial Affairs due **3/3/2026**
- Declaration of Schedules due  **3/3/2026**
- List of Equity Security Holders due **3/3/2026**
- Local Rule 1007-2 Affidavit due by: **3/3/2026**
- Corporate Ownership Statement due by: **3/3/2026**

17.    To date, the Debtor has yet to file any of the missing documents, Schedules, or Statements, many of which are past due.

18.    To date, Debtor has yet to retain counsel.

19.    To date, the Debtor has yet to file monthly operating reports.

20.    To date, the Debtor has yet to file a Disclosure Statement or Plan.

## II.      ARGUMENT

### A. <u>THE COURT SHOULD ANNUL THE AUTOMATIC STAY TO VALIDATE THE SALE</u>

#### 1.      **Legal Standard**

21.      Section 362 of the Bankruptcy Code creates an automatic stay applicable to all entities that, in general, and with some specific exceptions, stays all acts to create, perfect, or enforce any lien against property of the estate and/or to obtain possession of property of the estate. Pursuant to well settled Ninth Circuit precedent, actions taken in violation of the automatic stay are void. *See Schwartz v. United States (In re Schartz)*, 954 F.2d 569, 571 (9th Cir. 1992); *see also Gruntz v. County of Los Angeles (In re Gruntz)*, 202 F.3d 1074, 1082 (9th Cir. 2000). However, the Bankruptcy Code provides that, "[o]n request of a party in interest and after notice and a hearing, the court shall grant relief from the stay provided under subsection (a) of this section, such as by terminating, ***annulling***, modifying or conditioning such stay." 11 U.S.C. § 362(d). (emphasis added). Indeed, in appropriate circumstances, the court may annul the automatic stay retroactively to validate an act that was committed in violation of the stay and would otherwise be void. *See In re Siciliano*, 13 F.3d 748, 751 (3rd Cir. 1994); *see also Schartz*, *supra* at 573.

22.      Generally, the bankruptcy court has wide latitude to determine whether annulment of the automatic stay is appropriate and makes a case-by-case determination by balancing the equities. *In re Fjeldsted*, 293 B.R. 12, 26 (9th Cir. B.A.P. 2003). Although no one factor is dispositive, courts typically focus on two factors, including: (1) whether the creditor was aware of the bankruptcy petition; and (2) whether the debtor engaged in unreasonable or inequitable conduct, or prejudice would result to the creditor. Other factors courts consider include: (1) the

number of filings; (2) whether, in a repeat filing case, the circumstances indicate an intention to delay and hinder creditors; (3) a weighing of the extent of prejudice to creditors or third parties if the stay relief is not made retroactive, including whether harm exists to a bona fide purchaser; (4) the debtor's overall good faith (based upon the totality of the circumstances); (5) whether creditors knew of the stay, but nonetheless took action, thus compounding the problem; (6) whether the debtor has complied, and is otherwise complying, with the Bankruptcy Code and Rules; (7) the relative ease of restoring parties to the status quo ante; (8) the costs of annulment to debtors and creditors; (9) how quickly creditors moved for annulment, or how quickly debtors moved to set aside the sale or violative conduct; (10) whether, after learning of the bankruptcy, creditors proceeded to take steps in continued violation of the stay, or whether they moved expeditiously to gain relief; (11) whether annulment of the stay will cause irreparable injury to the debtor; and (12) whether stay relief will promote judicial economy or other efficiencies. *Id*. at 25.

  **2.**  **Cause Exists for Annulment the Automatic Stay to Validate the Foreclosure Sale**

  23.  In the present case, Creditor completed an otherwise lawful foreclosure sale on February 17, 2026, without any knowledge of Debtor's bankruptcy case or purported interest in the Property.

  24.  Specifically, on January 16, 2026, Creditor recorded the most recent Notice of Sale setting a sale date for <u>February 17, 2026</u> at 10:00 a.m. (*See* <u>Exhibit 5</u>).

  25.  On February 17, 2026 at 10:00 a.m., *the same day as the petition*, Creditor commenced, and then completed a foreclosure sale of the Property. At the time, Creditor had no knowledge of the instant Bankruptcy Case, which was allegedly filed less than two hours before the sale.

26.     On February 17, 2026, after the commencement of the foreclosure sale, a third party allegedly sent an email to Creditor's counsel, Aldridge Pite, LLP, directed to a general customer service inbox, enclosing a copy of the instant Bankruptcy petition, which listed a Bankruptcy filing date of February 17, 2026 at 8:54 a.m. (*See* Exhibit 6).

27.     On February 17, 2026, at 10:15 a.m. a Notice of Bankruptcy Case Fling was filed in the Foreclosure Case. (*See* Exhibit 7).

28.     The Debtor filed a skeletal petition with blank or missing information. Debtor listed the Property as its principal place of business on the petition. Creditor is listed as the only creditor of the Bankruptcy estate. The petition was signed by the Borrower as Member of the Debtor. (*See* Dkt No. 1).

29.     Moreover, nothing in the Petition or documents confirm or suggest the Debtor was the record owner of the Property as of the Bankruptcy petition date. However, following completion of the foreclosure sale, Creditor discovered the attached unauthorized Bargain and Sale Deed purporting to transfer interest in the Property from the Borrower, Bentzion Jacobovitch to the Debtor, 7 Merriewold LLC. **The Deed reflects that it was recorded on February 17, 2026 at 9:48 a.m. (minutes before the scheduled foreclosure sale).** (*See* Exhibit 9).

30.      There is sufficient cause to annul the automatic stay in this case as the balancing of the equities supports annulment. As an initial matter, Creditor had no knowledge of Debtor's bankruptcy case or purported interest in the Property at the time of the foreclosure sale. Indeed, Debtor is not the original borrower and is not the title owner of the Property. Thus, the only evidence of Debtor's purported interest in the Property was the Notice of Bankruptcy Filing in the Foreclosure Case, filed after the commencement of the foreclosure sale. Accordingly, there was no reason for Creditor to suspect there was an active bankruptcy case affecting the Property at the

time of the foreclosure sale.

31.     In addition, annulment is warranted because the instant bankruptcy filing appears to be part of a bad faith scheme by the Borrower to prevent Creditor from exercising its right to foreclose on the Property. More specifically, on April 4, 2025, Creditor recorded a Notice of Sale setting a sale date for May 7, 2025. (*See* Exhibit 4). However, Creditor was forced to cancel the scheduled foreclosure sale due to the filing of the First Bankruptcy Case by the Borrower on May 5, 2025, only two days before the original sale date. (*See* Exhibit 8). Following the dismissal of the First Bankruptcy Case, Creditor filed the most recent Notice of Sale setting a sale for February 17, 2026. The Borrower then waited until the day of the scheduled foreclosure sale to file the instant Bankruptcy Case in the name of his entity, asserting an interest in the Property.

32.     Furthermore, notwithstanding Debtor's purported acquisition of an interest in the Property, they do not reference any ownership interest in the Property whatsoever in their bankruptcy petition, schedules, or statements. In light of the foregoing, there is strong evidence that the Debtor's bankruptcy case is being used in furtherance of a bad faith scheme by the original Borrower.

33.     With respect to Fjeldsted factors 1 and 2, this is Debtor's only bankruptcy filing. However, as discussed above, there was a prior bankruptcy case filed by the Borrower that delayed Creditor's foreclosure sale, and the record indicates that Debtor's Bankruptcy Case was filed by the Borrower in order to assert an automatic stay with respect to Creditor's foreclosure sale conducted on February 17, 2026. Therefore, factor 1 and 2 weigh in favor of Creditor.

34.     Fjeldsted factors 4, 6, and 11 focus on Debtor and Debtor's actions. Debtor's bankruptcy case was filed in bad faith. Debtor filed a skeletal petition without counsel. To date,

Debtor has made no effort to comply with the Bankruptcy Rules by filing required documents. Thus, the above factors weigh in Creditor's favor.

35.     Fjeldsted factors 3, 5, and 10 focus on Creditor and Creditor's actions. Creditor did not know about Debtor's bankruptcy filing or the alleged automatic stay at the time of the foreclosure sale. Upon learning of Debtor's purported interest in the Property and bankruptcy filing, Creditor has moved expeditiously to obtain retroactive annulment of the stay to validate the foreclosure sale whereas Debtor has taken no action to set aside the sale. In the event that the stay is not annulled, there will be greater prejudice to Creditor than to the Debtor. More specifically, if the stay is not annulled, the sale will be null and void as a matter of law. Creditor would be unduly prejudiced as it would be required to incur additional and otherwise unnecessary fees and costs to conduct a new foreclosure sale. Conversely, unlike Creditor, Debtor will not be prejudiced as a result of annulment being granted since Debtor otherwise appears to claim no recorded ownership interest in the Property.  Thus, factors 3, 5, and 10 each weigh in favor of Creditor.

36.     Fjeldsted factors 7, 8, and 9 focus on both Debtor and Creditor. Creditor asserts that it would be difficult to restore the parties to *status quo ante* because Debtor would need to reimburse Creditor for the economic loss Creditor has suffered, plus interest for delay as well as attorneys' fees to file this motion. However, it appears the Debtor lacks the resources to pay these amounts. Creditor further alleges that that there will be significant costs related to rescinding the sale because Creditor will be required to record a new notice of sale, comply with advertising requirements, and provide various notices and disclosures required by foreclosure statutes. Thus, factors 7, 8, and 9 each weigh in favor of Creditor.

37.     Fjeldsted factor 12 looks to judicial interests. Here, retroactive annulment of the automatic stay will promote judicial economy and other efficiencies because (i) it appears that

Debtor's bankruptcy case was filed in bad faith, (ii) Creditor has already completed a foreclosure sale without any knowledge of the automatic stay, and (iii) requiring Movant to restart the procedures for a foreclosure sale of the Property would not keep court costs and proceedings down. This factor weighs in favor of Creditor. The remaining *In re Fjeldsted* factors also weigh in favor of annulment. For all of the reasons discussed herein, the balancing of the equities weighs strongly in favor of annulment of the automatic stay to validate the foreclosure sale.

38.      Finally, as discussed above, it is unclear if the Debtor truly possessed a valid ownership interest in the Property as of the Bankruptcy filing date. To the extent, the Debtor did not own the Property as of the filing date, Creditor seeks a court order confirming no stay is in effect.

**WHEREFORE**, Creditor prays that this Court issue an Order

1.      Annulling the automatic stay nunc pro tunc to February 17, 2026 for purposing of validating the foreclosure sale; or

2.      Confirming no stay is in effect as to the Property as the Debtor did not legally own the Property as of the Bankruptcy petition date; and

3.      Such other relief as the Court deems just and per.

Dated: April 7, 2026

Respectfully submitted,

*/s/ Jenelle Arnold*
Jenelle Arnold
Attorney for Creditor
Aldridge Pite, LLP
8880 Rio San Diego Drive
Suite 725
San Diego, CA 92108
Telephone: (858) 750-7600

Facsimile: (619) 590-1385
Email: JArnold@aldridgepite.com

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK - POUGHKEEPSIE DIVISION

---------------------------------------------------------------X    Case No. 26-35163-kyp

In Re:

                                                Chapter 11

7 MERRIEWOLD LLC,

                Debtor.                         **CERTIFICATE OF SERVICE**

---------------------------------------------------------------X

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the *MOTION FOR ANNULLMENT OF AUTOMATIC STAY NUNC PRO TUNC* was served via electronic means and/or mailed by U.S. Mail on April 7, 2026 to the parties listed below:

7 Merriewold LLC
7 Merriewold Lane S
Monroe, NY 10905
(via U.S. Mail)

Department of Justice
Southern District of New York (Poughkeepsie)
Office of the United States Trustee
11A Clinton Ave.
Room 620
Albany, NY 12207
USTPRegion02.PK.ECF@USDOJ.GOV
(via electronic notice)

                             **See creditor's served attached

                           Respectfully submitted,

                           /s/Jenelle C. Arnold
                           By: JENELLE C. ARNOLD
                           Aldridge Pite, LLP
                           3333 Camino del Rio South, Suite 225
                           San Diego, CA 92108
                           Telephone: (858) 750-7600
                           Email: jarnold@aldridgepite.com

**CREDITOR'S SERVED VIA U.S. MAIL:**

US Bank NA
1011 Centre Road
Wilmington, DE 19805-1267

Bentzion Jacobovitch
7 Merriewold Lane S,
Monroe, NY 10905